# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| DANITA L. MILLER,<br>　　Plaintiff, | )<br>)<br>) | |
| 　　　　v. | )<br>) | CAUSE NO.: 2:18-CV-253-JEM |
| ANDREW M. SAUL,<br>Commissioner of the Social<br>Security Administration,<br>　　Defendant. | )<br>)<br>)<br>)<br>) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Danita L. Miller, and Plaintiff's Opening Brief [DE 17], filed November 27, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On March 7, 2019, the Commissioner filed a response, and on March 25, 2019, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.	Background**

On September 6, 2013, Plaintiff filed an application for benefits alleging disability beginning November 27, 2012. On July 31, 2015, Administrative Law Judge ("ALJ") Martin McClelland issued a decision denying benefits, and the Appeals Council denied review. On May 25, 2017, this Court issued an Opinion and Order reversing the ALJ's decision and remanding the matter for further proceedings, pursuant to the parties' agreement. On January 17, 2018, ALJ Michelle Whetsel held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 7, 2018, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1

1. The claimant last met the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant did not engaged in substantial gainful activity during the period of her alleged onset date of November 27, 2012 through her date last insured of September 30, 2013.

3. Through the date last insured, the claimant had the following severe impairments: obesity, arthritis in lumbar spine, arthritis in the ankles bilaterally, seizure disorder, anxiety, depression, and migraine headaches.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl. She had to avoid concentrated exposure to extreme heat, extreme cold, noise at the DOT 4 level (loud), vibration, fumes, dusts, odors, gases, poor ventilation, as well as hazards such as moving machinery, unprotected heights, and wet, slippery, or uneven surfaces. She could frequently push and pull and operate foot controls bilaterally. She could remember and follow simple but not detailed instructions. She could perform the tasks assigned, but not always at a production rate pace; however, she could have met the end of day work goals. She could have occasional contact with co-workers, supervisors, and the general public. She could have occasionally adapted to rapid changes in the workplace.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from November 27, 2012, the alleged onset date, through September 30, 2013, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

III.    **Analysis**

Plaintiff argues that the ALJ erred in concluding that her impairments did not meet an impairment listed in the appendix to the social security regulations, and erred in evaluating her subjective symptoms.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). The determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Plaintiff argues that the ALJ applied the wrong listing criteria in evaluating her epilepsy and migraines. The ALJ described the criteria for meeting Listing 11.03 as follows:

> "evidence of epilepsy-minor motor seizures (petit mal, psychomotor, or focal) documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment with alteration of awareness or loss of consciousness and transient postictal manifestation of unconventional behavior or significant interference with activity during the day."

AR 562. As of December 15, 2014, predating the decisions of both ALJs in this case, those were no

5

longer the applicable criteria. *See* Social Security Program Operations Manual Systerm, DI 34131.013 Neurological Listings from 12/15/04 to 09/28/16, https://secure.ssa.gov/poms.nsf/lnx/0434131013 (Listings 11.02 and 11.03). In particular, the revised listings do not require that the claimant's seizures be "documented by EEG." *See id*. Listing 11.03 has since been removed, and epilepsy is currently analyzed under Listing 11.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. Regardless of the ALJ's stated reasons for finding that Plaintiff did not meet or medically equal the listing, her use of the wrong standard requires remand. *See, e.g.*, *Dunbar v. Berryhill*, No. 17 C 6278, 2018 WL 4095094, at *3 (N.D. Ill. Aug. 28, 2018) ("[Plaintiff]'s claim, however, is that the ALJ applied an incorrect legal standard. That precludes the Commissioner's position because courts give no deference to decisions based on the wrong standard."); see also *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1094-95 (E.D. Wis. 2001) ("[I]f the ALJ commits an error of law such as incorrectly applying legal standards, reversal is required without regard to the volume of evidence in support of the factual findings."). On remand, the ALJ must use the currently active version of Listing 11.02. *See* 81 Fed. Reg. 43048, 43051 n. 6 (July 1, 2016) ("If a court reverses the Commissioner's final decision and remands a case for further administrative proceedings after the effective date of the final rule [September 28, 2016], we will apply the final rule to the entire period at issue in the decision we make after the court's remand.").

Plaintiff also argues that the ALJ drew erroneous conclusions about her failure to follow a treatment plan, and improperly evaluated Plaintiff's own statements about her ailments. In considering a claimant's statements about her impairments, the ALJ must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016

6

WL 1119029 at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford*, 227 F.3d at 870-72). When failure to seek medical treatment or comply with treatment recommendations is used as a factor in determining whether a claimant's statements regarding her symptoms are to be believed, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

The ALJ discredited many of Plaintiff's complaints about her own seizures because some of her medical records indicated that she had not had seizures since childhood. *See* AR 364, 373 (reporting in August 2011 and June 2012 that Plaintiff's last seizure was at age 13); *but see* AR 367 (reporting in February 2012 that Plaintiff "has petite mal seizure[s] regularly"). Plaintiff testified at the first hearing in this case that she sometimes lied to treatment providers about her seizures because she did not have insurance, and was afraid of being sent to a hospital when she could not pay for it. The effect of Plaintiff's financial difficulties on her treatment is documented in her treatment notes. *See, e.g.,* AR 364 (discussing Plaintiff's attempt to change her seizure medication plan despite having "no medical insurance to see a Neurologist"); AR 434 (indicating that Plaintiff seeks treatment "as needed . . . due to financial restraints"). The ALJ failed to consider that potential explanation, and appeared to simply credit Plaintiff's statements that suggested she could work and discredit the ones that suggested disability. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)

("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *see also Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (An ALJ "cannot rely only on the evidence that supports her opinion.") (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ . . . cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The ALJ repeatedly suggested that Plaintiff's seizures were caused in part by non-compliance with her medication plan, without an adequate basis for saying so. Addressing the February 2012 report that Plaintiff had petit mal seizures "regularly," the ALJ concluded that this "appeared to be related to non-compliance with medication because she reported taking the anticonvulsant Tegretol three times instead of four times a day." The relevant treatment note indicated that she "has been taking it [three times a day] and would like to go back to [four times]." AR 367. This was consistent with previous notes from the same clinic discussing her attempts to "we[a]n off the Tegratol" [sic] without the help of a neurologist, because she could not afford one. *See* AR 364-65. The ALJ apparently inferred that the attempt to change her dosage contributed to the seizures, without reference to any medical professional's opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan*

8

*v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Addressing Plaintiff's 2013 complaints of grand mal seizures, the ALJ noted that the nurse practitioner's treatment notes did not discuss additional testing, explore why Plaintiff "all of a sudden" began reporting seizures, or explain why the nurse diagnosed depression and anxiety when previous providers did not. The ALJ deduced: "This suggests, although not conclusively, that the claimant had not been compliant with her anti-seizure medication prior to her visit with [the nurse practitioner]." As with the ALJ's prior comments on the topic, there was no basis in the medical record for "suggesting" that Plaintiff's condition was worsening because she was not taking her medication. This was speculation, not logically supported, on a question that should have been reserved to a medical professional. *O'Connor-Spinner*, 627 F.3d at 618 (an ALJ must provide a "logical bridge" between the evidence and her conclusions); *Schmidt*, 914 F.2d at 118 (ALJs must not "succumb to the temptation to play doctor").

On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's mental impairments meet or medically equal the criteria of a Listing. If the ALJ determines that Plaintiff's impairments do not meet or medically equal a Listing, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to the conclusions about Plaintiff's RFC. Any negative inferences made regarding Plaintiff's own statements must be analyzed in the manner required by SSR 16-3p, including any allegations of failure to pursue treatment or follow a treatment plan. The ALJ must also address every medical opinion in the manner prescribed by 20 C.F.R. § 404.1527, and explain the weight afforded to the opinion, including opinions provided after the date last insured. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 17], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 4th day of September, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record